ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL V

| | | |
|---|---|---|
| LUIS A. RIVERA POMALES, Y OTROS<br><br>Apelantes<br><br>v.<br><br>HOSPITAL MENONITA GUAYAMA, INC. Y OTROS<br><br>Apelados | TA2026AP00177 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Guayama<br><br>Caso Núm.: G AC2018-0028<br><br>Sobre: Incumplimiento de contrato |

Panel integrado por su presidenta, la Juez Domínguez Irizarry, el Juez Cruz Hiraldo y el Juez Sánchez Báez

Sánchez Báez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 21 de mayo de 2026.

Compareció el Dr. Luis A. Rivera Pomales (en adelante, Dr. Rivera Pomales o apelante) y su esposa, la Sra. Marisel Sierra Quintana (en adelante, señora Sierra Quintana), mediante recurso de *Apelación* presentado el 18 febrero de 2026. Nos solicitan que revoquemos la *Sentencia Sumaria* que emitió el Tribunal de Primera Instancia, Sala Superior de Guayama, el 8 de enero de 2026, notificada el día 13 del mismo mes y año.[1] En dicho dictamen, el foro de instancia declaró Ha Lugar la *Moción en Solicitud de Sentencia Sumaria* que presentó el Hospital Menonita Guayama, Inc., (en adelante, Hospital Menonita o apelado) y desestimó, con perjuicio, la *Demanda* sobre incumplimiento de contrato que presentó el doctor Rivera Pomales.

Por los fundamentos que esbozamos a continuación, se confirma la *Sentencia* apelada.

**-I-**

---

[1] Véase, Anejo 26 en el Apéndice del apelante.

El 4 de abril de 2018, el Dr. Rivera Pomales presentó una *Demanda* contra el Hospital Menonita por incumplimiento de contrato.[2] Expuso que el 9 de febrero de 2018, la institución hospitalaria le revocó los privilegios en el Hospital Menonita, sin que se le brindara una vista o procedimiento en el cual le explicaran las razones para dicha decisión. Arguyó, que el Hospital Menonita tampoco le proveyó una copia de un reglamento que le informara el proceso administrativo a seguir para impugnar dicha determinación. También, reclamó que el Hospital Menonita ignoró su solicitud para que le proveyeran una audiencia y copia de la decisión. Por último, alegó haber sufrido daños económicos, daños morales y angustias mentales. Por estos, reclamó las sumas estimadas de $5,000.00 y $100,000.00, respectivamente, además del restablecimiento de los privilegios.

Oportunamente, el Hospital Menonita presentó su respuesta a la reclamación incoada en su contra.[3] En su contestación, la institución hospitalaria negó la mayoría de las alegaciones y levantó como defensas afirmativas que la *Demanda* era prematura, ya que el apelante no había agotado los remedios que le conferían los estatutos de la facultad vigentes a la fecha en que expiraron sus privilegios temporeros.

Así las cosas, el 31 de agosto de 2018, las partes presentaron una moción conjunta en la que sometieron un proyecto de orden para someterse al procedimiento establecido en los Estatutos de la Facultad Médica del Hospital Menonita, con el fin de evaluar la solicitud de privilegios del Dr. Rivera Pomales.[4] De conformidad, el 17 de septiembre de 2018, el foro apelado ordenó a las partes a someterse al procedimiento establecido en los Estatutos de la

---

[2] *Id.*, Anejo 1.
[3] *Id.*, Anejo 2.
[4] *Id.*, Anejo 3.

Facultad Médica del Hospital Menonita.[5] Tras varias reuniones, el 25 de octubre de 2018, la Junta de Directores sostuvo la decisión de no renovar los privilegios del Dr. Rivera Pomales.

Luego de varias incidencias procesales, el apelante presentó una *Demanda Enmendada* en la que incluyó otras partes y sometió nuevas alegaciones.[6] En particular, expuso las razones que tuvo el Hospital Menonita para expulsarlo de la facultad médica. Alegó que el motivo respondió a ciertas irregularidades cometidas por el Hospital Menonita, por lo que solicitó se dejase sin efecto la *Orden* del 17 de septiembre de 2018.[7] El foro de instancia declaró ha lugar la petición.[8]

Después de numerosas incidencias procesales, el Hospital Menonita contestó la *Demanda Enmendada.*[9] El 7 de octubre de 2020, el apelante presentó una *Segunda Demanda Enmendada* que también contestó el apelado.[10]

Tras un extenso descubrimiento de prueba, el 5 de noviembre de 2025, el Hospital Menonita presentó una *Moción en Solicitud de Sentencia Sumaria,* mediante la cual solicitó la desestimación de la *Demanda.*[11] Expuso que no existía controversia en cuanto a que el apelante no agotó los remedios provistos por los Estatutos de la Facultad Médica, documento que constituía el contrato entre las partes. Ante ello, sostuvo que el foro de instancia no tenía jurisdicción para intervenir.

El Dr. Rivera Pomales se opuso a la petición sumaria.[12] Sostuvo que existían hechos materiales en controversia que impedían la adjudicación sumaria del pleito. Además, solicitó que se

---

[5] *Id.*, Anejo 4.
[6] *Id.*, Anejo 7.
[7] *Id.*, Anejo 8.
[8] *Id.*, Anejo 9.
[9] *Id.*, Anejo 16.
[10] *Id.*, Anejo 17 y 20.
[11] *Id.*, Anejo 22.
[12] *Id.*, Anejo 23.

refiriera al Hospital Menonita para investigación por las autoridades federales por alterar las codificaciones para facturar a los planes médicos.

Después de evaluar las posiciones de las partes, el 8 de enero de 2026 el tribunal apelado emitió *Sentencia Sumaria* en la que consignó los siguientes hechos esenciales y pertinentes no controvertidos:

1. El Hospital San Lucas de Guayama fue adquirido por el Hospital Menonita Guayama, Inc. el 13 de septiembre de 2017.

2. El Dr. Luis Rivera Pomales pertenecía a la Facultad Médica del Hospital San Lucas de Guayama cuando dicho hospital fue adquirido por el Hospital Menonita Guayama, Inc.

3. Más allá de haber tenido privilegios temporeros mientras se evaluaba su solicitud de nombramiento, el Dr. Luis Rivera Pomales nunca ha ocupado un puesto en el Hospital Menonita Guayama, Inc.

4. El Dr. Rivera Pomales solicitó nombramiento y privilegios iniciales en el Hospital Menonita Guayama.

5. Al solicitar dicho nombramiento inicial el Dr. Rivera Pomales se obligó a observar y cumplir con los Estatutos de Facultad Médica del Hospital.

6. En la Solicitud de Nombramiento y Privilegios Clínicos que llenó el Dr. Rivera Pomales, éste reconoció lo siguiente: "That I have had the opportunity to read a copy of the Medical Staff Bylaws and such Hospital politics and directives as are applicable to appointees to the Medical Staff, including these Bylaws and Rules & Regulations of the Medical Staff presently in force; and I specifically agree to abide by all such bylaws, policies, directives and rules and regulations as are in force, and as they may thereafter be amended, during the time I am appointed to the Medical Staff or exercise Clinical Privileges at the Hospital".

7. Conforme los Estatutos de Facultad Médica se le extendieron privilegios temporeros al Sr. Rivera Pomales.

8. El 13 de septiembre de 2017, el Hospital Menonita Guayama, Inc. le cursó una carta al Dr. Rivera Pomales en donde se le indicó a este que se estará evaluando su Solicitud de Nombramiento y Privilegios Clínicos se estará evaluando de conformidad con los Estatutos de Facultad Médica ("Medical Staff Bylaws").

9. En dicha carta, además, se le notificó al Dr. Rivera Pomales que se le estaban extendiendo privilegios clínicos temporeros con una vigencia de 120 días, hasta el 10 de enero de 2018.

10. Asimismo, se le indicó en dicha carta al Dr. Rivera Pomales que "Al aceptar los privilegios temporeros, usted se compromete a dar fiel cumplimiento a los Estatutos Presidentes (Bylaws), las Políticas (Policies), Normas y Procedimientos (Rules & Regulations) de la Facultad Médica,

así como las políticas institucionales aprobadas por la Junta de Directores del Hospital".

11. El 8 de enero de 2018, el Hospital Menonita Guayama, Inc. le cursó una carta al Dr. Rivera Pomales en donde le indicó que, debido a los atrasos en las actividades administrativas y operacionales del Hospital por el paso del Huracán María, el proceso de evaluación de su solicitud de privilegios también se había atrasado, razón por la cual se estaban extendiendo sus privilegios temporeros por un periodo adicional hasta el 10 de febrero de 2018.

12. El 9 de febrero de 2018, el Hospital Menonita Guayama, Inc. le cursó una carta al Dr. Rivera Pomales mediante la cual se le informó que "Mediante esta comunicación se le notifica que la Junta de Directores del Hospital Menonita Guayama, Inc. luego de evaluar su solicitud de nombramiento y privilegios clínicos, y considerar todos los factores inherentes a este proceso, determinó <u>denegar</u> su solicitud".

13. Al momento de presentarse la Demanda el Dr. Rivera Pomales no había llevado a cabo ni culminado el proceso interno de agotamiento de remedios de los Estatutos de Facultad Médica del Hospital Menonita Guayama.

14. El 17 de septiembre de 2018, a petición por estipulación de las partes, este Honorable Tribunal dictó una Orden mediante la cual se dispuso que el Dr. Rivera Pomales se sometería al proceso de revisión establecido en el Estatuto de Facultad Médica o Medical Staff Bylaws.

15. El 6 de noviembre de 2018, el Hospital Menonita Guayama, Inc. le cursó una carta al Dr. Rivera Pomales en donde se le notificó que: "De conformidad con los 'Medical Staff Bylaws' del Hospital Menonita Guayama y aprobados el pasado 17 de agosto de 2017 (en adelante 'Estatutos'), así como lo dispuesto en la Orden emitida por el Tribunal en el caso Luis A. Rivera Pomales v. Hospital Menonita Guayama, G AC2018-0028, la Junta de Directores determinó reiterar su decisión de **no aprobar su solicitud de nombramiento y provilegios clínicos en la Facultad Médica del Hospital Menonita Guayama**. (Énfasis en el original).

16. En dicha carta, se expusieron los fundamentos en los que se basó la Junta de Directores del Hospital para confirmar la determinación de no aprobar la solicitud de nombramiento y privilegios clínicos del Dr. Rivera Pomales.

17. En la carta del 6 de noviembre de 2018 se le notificó al Dr. Rivera Pomales específicamente cuáles eran sus derechos bajo el Artículo XI de los Estatutos de Facultad Médica o "Medical Staff Bylaws".

18. Junto con la carta del 6 de noviembre de 2018 se anejó y notificó al Dr. Rivera Pomales copia del Artículo XI de los Estatutos de Facultad Médica o "Medical Staff Bylaws".

19. El Artículo 11.2 de los Estatutos de Facultad Médica o "Medical Staff Bylaws" establece lo siguiente:

Exhaustion of Remedies

The actions taken and the review performed pursuant to these Bylaws do not give rise to a judicial cause of action or claim to an applicant/member to be enforced in the courts if a fair process is provided. But, **if the applicant/member**

**wants to seek legal remedy, first he/she must exhaust the remedies afforded by this Bylaws before resorting to legal action**. (Énfasis en el original).

20. El proceso de agotamiento de remedios establecido en el Estatutos de Facultad Médica o "Medical Staff Bylaws" dispone que se celebrará una vista ("hearing") y una apelación ("appeal").

21. De conformidad con el Artículo 11.8 de los Estatutos de Facultad Médica o "Medical Staff Bylaws", el Dr. Rivera Pomales tenía un término de treinta (30) días para solicitar la celebración de una vista.

22. El 29 de noviembre de 2018, mediante carta enviada por el Lcdo. Fernando Olivero Barreto, en representación del Dr. Rivera Pomales, este último solicitó la celebración de una vista evidenciaría bajo el proceso establecido en los Estatutos de Facultad Médica o "Medical Staff Bylaws".

23. El 7 de diciembre de 2018, luego de haber solicitado la celebración de la vista que requiere los Estatutos de Facultad Médica o "Medical Staff Bylaws" para agotar los remedios, el Dr. Rivera Pomales presentó ante este Honorable Tribunal una "Moción Solicitando se Deje sin Efecto la Orden del 17 de septiembre de 2018".

24. El 30 de enero de 2019, el Hospital Menonita Guayama, Inc. le cursó una carta al Dr. Rivera Pomales, a través de su abogado, en donde se le indicó que, conforme su carta en solicitud de vista, los Estatutos de Facultad Médica requerían que dicha vista se celebrara en o antes del 27 de febrero de 2019.

25. En dicha carta, además, se hizo referencia a una moción reciente en donde el Dr. Rivera Pomales había indicado que "no interesa en forma alguna someterse a un proceso a todas luces amañado y que responde exclusivamente a los intereses de la parte codemandada".

26. El 11 de febrero de 2019, el Hospital Menonita Guayama, Inc. le cursó una carta al Dr. Rivera Pomales, a través de su abogado, en donde se le indicó que "En atención a la cercanía de la fecha límite y las gestiones necesarias para la celebración de la antes referida vista, resulta preciso que en un término no mayor a cinco (5) días nos brinde contestación a nuestro comunicado. **De no recibir contestación, se presumirá que su cliente no tiene interés en la celebración de la vista y que est[a]ría renunciando a la misma**. Le recuerdo que el Artículo XI es claro en torno al efecto que tiene la renuncia a la vista, que incluye, la aceptación de la determinación adversa sin procedimiento ulterior disponible". (Énfasis en el original).

27. El Dr. Rivera Pomales, al no contestar las cartas enviadas por el Hospital Menonita Guayama, Inc. para la celebración de su vista, renunció a su derecho bajo los Estatutos de Facultad Médica o "Medical Staff Bylaws" de cuestionar la determinación adversa en su contra.

28. Los Estatutos de Facultad Médica o "Medical Staff Bylaws" del Hospital Menonita Guayama, Inc. fueron aprobados por el "Governing Body" el 19 de agosto de 2017 y adoptados por el "Medical Staff" el 28 de agosto de 2017.

En consideración a lo anterior, decretó ha lugar la petición de sentencia sumaria que presentó el Hospital Menonita y desestimó con perjuicio la *Demanda.* Como fundamento para su decisión expuso que el apelante no agotó los remedios internos del Hospital Menonita, por lo que carecía de jurisdicción para atender su reclamo.

En desacuerdo, el apelante solicitó reconsideración del dictamen y determinación de hechos adicionales.[13] El Hospital Menonita se opuso a la petición.[14] Examinados los argumentos de las partes, el foro de instancia denegó su petición.[15]

Aún inconforme, el Dr. Rivera Pomales acudió ante este foro intermedio mediante el recurso de epígrafe en el que señaló la comisión de los siguientes errores:

> Primer Error: Erró el TPI al no determinar que, como cuestión de derecho, el hospital incumplió su contrato con el Dr. Rivera Pomales, por lo que, a tenor con el Art. 1077 del Código Civil, él estaba autorizado a presentar su demanda.
>
> Segundo Error: Erró el TPI al dictar sentencia sumaria, sin determinar los hechos incontrovertidos que establecían que fue el hospital quien incumplió el contrato entre las partes y determinar que dichos hechos no eran materiales, también a pesar de que los apelantes controvirtieron muchos de los hechos de la moción del hospital.
>
> Tercer Error: Erró el TPI al dictar la sentencia sumaria, en contradicción con su previa orden a inicios del caso, eximiendo al Dr. Rivera Pomales de someterse a los procesos internos del hospital.

**-II-**

**A. Sentencia Sumaria**

Las Regla 36 de Procedimiento Civil de Puerto Rico, 32 LPRA Ap. V, R. 36, instituye el mecanismo de sentencia sumaria a nuestro ordenamiento jurídico. En particular, su función es permitir que cualquiera de las partes pueda mostrar, previo al juicio y luego del descubrimiento de prueba, que no existe una controversia material de hecho que deba ser dirimida en un juicio plenario; y que, por tanto, el tribunal está en posición de aquilatar esa evidencia para

---

[13] *Id.*, Anejo 27.
[14] *Id.*, Anejo 28.
[15] *Id.*, Anejo 29.

disponer del caso ante sí. 32 LPRA Ap. V, R. 36.1-36.2; *Rodríguez Méndez v. Laser Eye,* 195 DPR 769, 784-785 (2016).

En ese sentido, la parte promovente de la solicitud debe demostrar la inexistencia de una controversia de hecho material por medio de una moción fundamentada, mientras que la parte promovida debe mostrar que existe controversia de algún hecho material sobre la totalidad o parte de la causa de acción. *Rodríguez Méndez v. Laser Eye,* supra, pág. 785. Además, la parte promovida no puede descansar en meras afirmaciones contenidas en sus alegaciones ni tomar una actitud pasiva, sino que está obligada a presentar evidencia que demuestre la existencia de controversia sustancial de hechos. *Id.* Sin embargo, ninguna de las partes puede enmendar sus alegaciones a través de la presentación de una sentencia sumaria o su oposición. *León Torres v. Rivera Lebrón*, 204 DPR 20, 47 (2020).

Así pues, para que el tribunal pueda adjudicar en los méritos una controversia de forma sumaria, es necesario que de las alegaciones, deposiciones, contestaciones a interrogatorios, admisiones, declaraciones juradas y cualquier otra evidencia ofrecida, surja que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente y que, como cuestión de derecho, procede dictar sentencia sumaria a favor de la parte promovente. 32 LPRA Ap. V, R. 36.3(e).

En cuanto a los hechos esenciales y pertinentes, también conocidos como hechos materiales, son aquellos que pueden afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable. *Oriental Bank v. Caballero García*, 212 DPR 671, 679 (2023). Por lo tanto, el tribunal solo podrá dictar sentencia sumaria en los casos en los cuales tenga ante su consideración todos los hechos materiales para resolver la controversia y surja claramente que la parte promovida por el recurso no prevalecerá. *Id.*

Conviene destacar que el Tribunal Supremo ha dispuesto que, el foro apelativo se encuentra en igual posición que el Tribunal de Primera Instancia para evaluar la procedencia de una solicitud de sentencia sumaria. *Rivera Matos et al. v. Triple-S et al.*, 204 DPR 1010, 1025 (2020). *Meléndez González et al. v M. Cuebas*, 193 DPR 100, 115 (2015). Además, el Alto Foro estableció el estándar específico de revisión que debe utilizar el Tribunal de Apelaciones, a saber: (1) examinar de *novo* el expediente, de la manera más favorable a favor de la parte promovida, y aplicar las disposiciones de la Regla 36 de Procedimiento Civil, *supra* como su jurisprudencia interpretativa; (2) revisar que la moción de sentencia sumaria y su oposición cumplan con los requisitos de forma codificada en la Regla 36.4 de Procedimiento Civil, *supra;* (3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, exponer concretamente los hechos materiales controvertidos e incontrovertidos; y (4) de encontrar que los hechos materiales realmente son incontrovertidos, debe proceder a revisar de *novo* si el foro primario aplicó correctamente el derecho a la controversia. *Meléndez González et al. v M. Cuebas,* supra, págs. 117-119. Además, el foro apelativo en su revisión está limitado a lo siguiente:

> *[P]rimero*, sólo puede considerar los documentos que se presentaron ante el foro de primera instancia. Las partes no pueden añadir en apelación *exhibit*[s], deposiciones o affidávit[s] que no fueron presentados oportunamente en el foro de primera instancia, ni pueden esbozar teorías nuevas o esgrimir asuntos nuevos por primera vez ante el foro apelativo. *Segundo*, el tribunal apelativo sólo puede determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y si el derecho se aplicó de forma correcta. No puede adjudicar los hechos materiales y esenciales en disputa. Esa tarea le corresponde al foro de primera instancia. *Id.,* pág. 114-115.

## B. Discreción de los hospitales privados

En *Hernández v. Asoc. Hosp. del Maestro*, 106 DPR 72, 79- 81 (1977), el Tribunal Supremo estableció que los tribunales no deben intervenir con la discreción que ostenta un hospital para suspender

a un miembro de su facultad médica, a menos que el hospital en cuestión incumpla sus propios requisitos procesales de notificación y vista. En específico resolvió que:

> La discreción que tiene la Junta de Directores de un hospital privado para suspender a un miembro de su facultad médica o para retirarle o limitarle sus privilegios como tal, no puede ser ejercida de modo irrazonable, caprichoso o arbitrario. Art. III, Sec. VI. Se ha sostenido que un médico que haya sido excluido irrazonablemente de la facultad de un hospital podría ser repuesto. Véase *Woodward v. Porter Hospital*, 217 A.2d 37 (1966). Los tribunales harán caso omiso o declararán inválidas las normas que adoptare un hospital para suspensiones si dichas normas resultaren muy vagas o subjetivas. Una afirmación, por ejemplo, al efecto de que la suspensión fue efectuada en los mejores intereses del hospital o de sus pacientes, sin estar apoyada en hechos específicos podría ser invalidada. *Véase Milford v. People's Community Hospital Authority*, 144 N.W.2d 687 (1966).
>
> También se ha reconocido que un médico debe tener la oportunidad de una audiencia para presentar la evidencia con que contare antes de que la acción tomada contra él por la institución sea final, a menos que su continuada presencia en el hospital constituyera una seria e inmediata amenaza. Véase, *Sussman v. Overlook Hospital Ass'n*, 231 A.2d 389 (1971).
>
> **En cuanto a sus remedios ante los tribunales, es nuestra opinión que, antes de recurrir a ellos, debe haber agotado los remedios que ofrecen los procedimientos disponibles en ley, y solamente intervendremos cuando el hospital hubiere incurrido en violaciones de sus propios requisitos procesales de notificación y vista**. (Énfasis suplido).

Solamente se puede intervenir sin agotar los remedios en los casos en que la reglamentación no cumpla con los requisitos mínimo del debido proceso de ley o que sus decisiones sean arbitrarias, caprichosas o irrazonables. *Hernández v. Asoc. Hosp. del Maestro*, supra, pág. 81.

## -III-

Para el apelante, la *Sentencia Sumaria* emitida es errada y contraria a derecho, al no reconocer que el Hospital Menonita incurrió en incumplimiento contractual, hecho que permitía que este presentara su demanda sin seguir el proceso interno. En su

opinión, la actuación del Hospital Menonita, de no exponer las razones para no concederle los privilegios y negarle una audiencia ante la Junta de Directores, constituyó un incumplimiento de contrato que lo eximía de someterse al procedimiento establecido en los Estatutos de la Facultad Médica.

A su vez, alega que la determinación del tribunal primario, de que este debía someterse al procedimiento administrativo antes de presentar su reclamo, es "contraria e inconsistente" con la *Orden* que emitió para dejar sin efecto la designación del comité ejecutivo. Según expuso, dicha determinación tuvo el efecto de eximirlo del procedimiento administrativo del hospital.

Por su parte, el Hospital Menonita asegura que el apelante no tiene razón. Sostiene que no existe controversia sobre el hecho de que el Dr. Rivera Pomales no agotó el proceso de revisión interno que disponen los Estatutos de la Facultad Médica antes de acudir al foro judicial, por lo que procede la confirmación del dictamen. Veamos.

Después de un examen de *novo* del expediente en autos, determinamos que la *Moción en Solicitud de Sentencia Sumaria* que presentó el Hospital Menonita, así como la *Oposición de Demandantes a Moción de Sentencia Sumaria* […] cumplieron con los requisitos de forma que establece la Regla 36.3 (a) de Procedimiento Civil, *supra*. No obstante, la oposición no logró controvertir los hechos esenciales que consignó el Hospital Menonita. El Dr. Rivera Pomales solo se limitó a reiterar que la parte apelada incumplió el contrato entre las partes, al no explicar las razones para denegar los privilegios que ostentaba y no conceder una audiencia en donde se dilucidara los motivos para la suspensión de los privilegios.

Por consiguiente, los hechos incontrovertidos propuestos por el Hospital Menonita se dan por admitidos, conforme dispone la

Regla 36, *supra*. Veamos, entonces, si el foro de instancia aplicó correctamente el derecho a la controversia presentada.

Según expusimos en la parte precedente, el Dr. Rivera Pomales tuvo la oportunidad de someterse al procedimiento interno establecido en los Medical Staff Bylaws del Hospital Menonita para dilucidar su reclamo. Sin embargo, este optó por renunciar a dicho procedimiento al solicitar al tribunal apelado que dejara sin efecto la *Orden* del 17 de septiembre de 2018, que ordenaba a las partes someterse al procedimiento establecido en los Estatutos de la Facultad Médica del Hospital Menonita. Al así actuar, el apelante privó de jurisdicción al foro de instancia para intervenir en la causa.

De acuerdo con los Estatutos de la Facultad Médica, el apelante debía agotar los remedios antes de acudir al foro judicial para instar un reclamo. Específicamente, la cláusula 11.2 del Artículo XI de los Medical Staff Bylaws dispone que:

> The actions taken and the reviews performed pursuant to these Bylaws do not give rise to a judicial cause of action or claim to an applicant/member to be enforced in the courts if a fair process is provided. **But, if the applicant/member wants to seek legal remedy, first he/she must exhaust the remedies afforded by these Bylaws before resorting to legal action.** (Énfasis suplido).

Como vemos, el Dr. Rivera Pomales debía agotar los remedios antes de acudir al tribunal para presentar su reclamo, pero no lo hizo. Asimismo, nuestra jurisprudencia ha sido clara al establecer que en los casos como el de autos es preciso agotar los remedios provistos en los estatutos del hospital en cuestión, antes de acudir al tribunal. A menos, que el reclamo exponga que se incurrió en una violación a los propios requisitos procesales del hospital. *Hernández v. Asoc. Hosp. del Maestro*, supra.

Como ya señalamos, el propio apelante renunció a su derecho a que la Junta de Directores del Hospital Menonita le concediera una audiencia, al solicitarle al tribunal *a quo* que dejara sin efecto

la *Orden* del 17 de septiembre de 2018. Por tanto, el foro de instancia no incidió al desestimar el pleito de epígrafe.

**-IV-**

En mérito de lo anterior, confirmamos la *Sentencia Sumaria* apelada.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones